1  John C. Bohren (California Bar No. 295292)
   **YANNI LAW APC**
2  P.O. Box 12174
   San Diego, CA 92112
3  Telephone: (619) 433-2803
   Fax: (800) 867-6779
4  yanni@bohrenlaw.com

5

6  Paul J. Doolittle *(Pro Hac Vice* Forthcoming*)*
   **POULIN | WILLEY | ANASTOPOULO**
7  32 Ann Street
   Charleston, SC 29403
8  Telephone: (803) 222-2222
   Fax: (843) 494-5536
9  Email: paul.doolittle@poulinwilley.com
           cmad@poulinwilley.com
10

11 *Attorneys for Plaintiff and Proposed Class*

12

13                    **UNITED STATES DISTRICT COURT**
                      **NORTHERN DISTRICT OF CALIFORNIA**
14

15

16  **JASON GORDON, individually and on behalf**    )   Case No.:
    **of all others similarly situated,**            )
17                                                    )   **CLASS ACTION COMPLAINT**
                                    **Plaintiff,**    )
18                                                    )   **JURY TRIAL DEMANDED**
          vs.                                         )
19                                                    )   1. Negligence/Wantonness
    **SERVICEAIDE, INC.,**                            )   2. Breach of Implied Contract
20                                                    )   3. Unjust Enrichment
                                    **Defendant.**    )   4. Invasion of Privacy
21                                                    )   5. Third Party Beneficiary
                                                      )   6. Violation of Cal. Bus. & Prof. Code §17200
22                                                    )
                                                      )
23                                                    )

24  _____

25         Plaintiff, Jason Gordon, ("Plaintiff") brings this Class Action Complaint against Defendant

26  Serviceaide Inc., ("Defendant") as an individual and on behalf of all others similarly situated, and

27  alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and

28  upon information and belief as to all other matters, as follows:

**PARTIES, JURISDICTION & VENUE**

1.      Plaintiff, Jason Gordon is a resident and citizen of Texarkana, Arkansas.

2.      Defendant, Serviceaide Inc., is a foreign corporation with a principal place of business located at 2445 Augustine Drive, Suite 150, Santa Clara, CA 95054.

3.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

4.      This Court has personal jurisdiction over Defendant because its principal place of business is in the State of California. Defendant has also purposefully availed itself of the laws, rights, and benefits of the State of California.

5.      Venue is proper under 28 U.S.C §1391(b) because Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

**FACTUAL ALLEGATIONS**

6.      Defendant Serviceaide offers digital service management solutions, primarily focusing on IT Service Management (ITSM) and Enterprise Service Management (ESM). Defendant provides information technology support management services to Catholic Health, a six-hospital healthcare system. Defendant requires access to the electronic protected health information of Catholic Health's patients.

7.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the protected health information ("PHI") and other personally identifiable information ("PII") of 483,126 individuals, including, but not limited to: name, Social Security number, date of birth, medical record number, patient account number, medical/health information,

health insurance information, prescription/treatment information, clinical information, provider name, provider location, and email/username and password.

8.    Between September 19, 2024, and November 5, 2024, certain patient information within Serviceaide's Catholic Health Elasticsearch database was made publicly available (hereafter, the "Data Breach"). Defendant did not learn that the information was publicly disclosed until November 15, 2024.

9.    Defendant emailed Plaintiff a "Notice of Data Breach" on May 9, 2025. Omitted from the notice letter were the details of how the Data Breach occurred, the reason for the six-month delay in providing notice, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these omitted details have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their PII/PHI remains protected.

10.    As a business associate, Defendant is covered by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (*see* 45 C.F.R. §160.102) and as such is required to comply with the HIPAA Privacy Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

11.    The HIPAA Privacy Rule and Security Rule establishes standards for the protection of protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a covered entity. *See* 45 C.F.R. § 160.103.

12.    The Privacy Rule requires Defendant to implement appropriate safeguards to protect the privacy of protected health information. The Security Rule requires Defendant to implement appropriate administrative, physical and technical safeguards to ensure the confidentiality, integrity,

and security of electronic protected health information. The HIPAA rules also require Defendant to provide notice of an unauthorized disclosure of unencrypted protected health information, without unreasonable delay <u>and in no case later than 60 calendar days after discovery of a breach</u>.

13.    During its relationship with Catholic Health, Defendant collected or created PHI/PII related to Plaintiff and Class Members. By collecting or creating that PHI/PII Defendant was obligated to adhere to data protection obligations contained in its business associates' agreement or other vendor contract with Catholic Health.

14.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding PHI/PII and of the foreseeable consequences that would occur if a data breach occurred, including the significant cost that would be imposed on Plaintiff and the Class Members as a result.

15.    In 2024, the US Department of Health and Human Services Office for Civil Rights (HHS OCR), was notified of about 720 incidents between January 1, 2024, and December 31, 2024, which accounted for roughly 186 million user records that were impermissibly disclosed. Roughly 89% of those data breaches affected healthcare providers and business associates.[1]  These numbers are on par with data breach statistics in healthcare from 2023 where the Office of Civil Rights reported 725 notifications of breaches, where more than 133 million records were exposed or impermissibly disclosed.[2]

16.    The Data Breach was a direct result of Defendant's failure to implement an information security program designed to: (a) to ensure the confidentiality, integrity, and availability of customer information; (b) to protect against anticipated threats or hazards to the

---

[1] https://www.securityweek.com/2024-us-healthcare-data-breaches-585-incidents-180-million-compromised-user-records/

[2] *Healthcare fraud and the burden of medical ID theft*, available at: https://www.experian.com/blogs/healthcare/healthcare-fraud-and-the-burden-of-medical-id-theft/

CLASS ACTION COMPLAINT

security, availability, or integrity of that information; and (c) to protect against unauthorized access to that information that could result in substantial harm or inconvenience to any customer.

17.     An information security program encompasses the administrative, technical, or physical safeguards used to access, collect, distribute, process, protect, store, use, transmit, dispose of, or otherwise handle customer information. Had Defendant implemented an information security program consistent with industry standards and best practices, it could have prevented the Data Breach.

18.     The imminent risk of future harm resulting from the Data Breach is traceable to the Defendant's failure to adequately secure the PII in its custody, and has created a separate, particularized, and concrete harm to the Plaintiff.

19.     According to the Social Security Administration, each time an individual's Social Security number is compromised, "the potential for a thief to illegitimately gain access to bank accounts, credit cards, driving records, tax and employment histories and other private information increases." [3] Moreover, "[b]ecause many organizations still use SSNs as the primary identifier, exposure to identity theft and fraud remains."[4]

20.     The Social Security Administration stresses that the loss of an individual's Social Security number, as experienced by Plaintiff and some Class Members, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone

---

[3] *See*:
https://www.ssa.gov/phila/ProtectingSSNs.htm#:~:text=An%20organization's%20collection%20and%20use, and%20other%20private%20information%20increases. (last visited June 2, 2025).
[4] *Id.*

illegally using your Social Security number and assuming your identity can cause a lot of problems.[5]

21.    In fact, "[a] stolen Social Security number is one of the leading causes of identity theft and can threaten your financial health."[6] "Someone who has your SSN can use it to impersonate you, obtain credit and open bank accounts, apply for jobs, steal your tax refunds, get medical treatment, and steal your government benefits."[7]

22.    Note, it is not an easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

23.    Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[8]

24.    For these reasons, some courts have referred to Social Security numbers as the "gold standard" for identity theft. *Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111, 2019 WL 7946103, at *12 (D. Mass. Dec. 31, 2019) ("Because Social Security numbers are the gold standard for identity theft, their theft is significant . . . . Access to Social Security numbers causes long-lasting jeopardy because the Social Security Administration does not normally replace Social Security numbers."), report and recommendation adopted, No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30,

---

[5] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited June 2, 2025).
[6] *See* https://www.equifax.com/personal/education/identity-theft/articles/-/learn/social-security-number-identity-theft/ (last visited June 2, 2025).
[7] *See* https://www.investopedia.com/terms/s/ssn.asp (last visited June 2, 2025).
[8] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited June 2, 2025).

2020); *see also McFarlane v. Altice USA, Inc.*, 2021 WL 860584, at *4 (citations omitted) (S.D.N.Y. Mar. 8, 2021) (the court noted that Plaintiff's Social Security numbers are: arguably "the most dangerous type of personal information in the hands of identity thieves" because it is immutable and can be used to "impersonat[e] [the victim] to get medical services, government benefits, ... tax refunds, [and] employment." . . . Unlike a credit card number, which can be changed to eliminate the risk of harm following a data breach, "[a] social security number derives its value in that it is immutable," and when it is stolen it can "forever be wielded to identify [the victim] and target his in fraudulent schemes and identity theft attacks.")

25.    Similarly, the California state government warns consumers that: "[o]riginally, your Social Security number (SSN) was a way for the government to track your earnings and pay you retirement benefits. But over the years, it has become much more than that. It is the key to a lot of your personal information. With your name and SSN, an identity thief could open new credit and bank accounts, rent an apartment, or even get a job."[9]

26.    As a result of the Data Breach, Plaintiff has suffered an actual injury, similar to an intangible harm remedied at common law. Defendant's failure to implement an information security program resulted in the unauthorized disclosure of Plaintiff's private information. The unauthorized disclosure of Plaintiff's PHI constitutes an invasion of a legally protected privacy interest, that is traceable to the Defendant's failure to adequately secure the PHI in its custody, and has resulted in actual, particularized, and concrete harm to the Plaintiff.  The injuries Plaintiff suffered, as described herein, can be redressed by a favorable decision in this matter.

27.    Plaintiff brings this class action lawsuit individually, and on behalf of all those similarly situated, to address Defendant's inadequate data protection practices and for failing to provide timely and adequate notice of the Data Breach.

---

[9] *See* https://oag.ca.gov/idtheft/facts/your-ssn (last visited June 2, 2025).

28.     Through this Complaint, Plaintiff seeks to remedy these harms individually, and on behalf of all similarly situated individuals whose PII was accessed during the Data Breach. Plaintiff has a continuing interest in ensuring that personal information is kept confidential and protected from disclosure, and Plaintiff should be entitled to injunctive and other equitable relief.

### *Data Breaches Are Avoidable*

29.     Upon information and belief, the Data Breach was a direct result of Defendant's failure to: (i) identify risks and potential effects of collecting, maintaining, and sharing personal information; (ii) adhere to its published privacy practices; (iii) implement reasonable data protection measures for the collection, use, disclosure, and storage of PHI; and/or (iv) ensure its third-party vendors were required to implement reasonable data protection measures consistent with Defendant's data protection obligations.

30.     Defendant's privacy policies indicate that PHI will be secured via the use of administrative, technical, and physical security controls designed to safeguard that information.[10]

31.     Upon information and belief, the potential for improper disclosure of Plaintiff's PHI was a known risk to Defendant, and thus, Defendant was on notice that failing to take steps necessary to secure the PHI from those risks left the data in a dangerous condition.

32.     The Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), has issued guidance documents regarding compliance with the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality,

---

[10] See, *e.g.*, *Customer Privacy Statement*, updated November 30, 2024, available here:
https://www.serviceaide.com/customer-privacy-statement

CLASS ACTION COMPLAINT

integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule.[11]

33.     To detect and prevent unauthorized disclosures, Defendant could and should have implemented the following measures:

Reasonable Safeguards

a. Regularly patch critical vulnerabilities in operating systems, software, and firmware on devices. Consider using a centralized patch management system.

b. Check expert websites (such as www.us-cert.gov) and your software vendors' websites regularly for alerts about new vulnerabilities and implement policies for installing vendor-approved patches to correct problems.

c. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks. Depending on your circumstances, appropriate assessments may range from having a knowledgeable employee run off-the-shelf security software to having an independent professional conduct a full-scale security audit.

d. Scan computers on your network to identify and profile the operating system and open network services. If you find services that you don't need, disable them to prevent hacks or other potential security problems.

e. Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

f. Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email.

g. Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

h. Configure firewalls to block access to known malicious IP addresses.

i. Set anti-virus and anti-malware programs to conduct regular scans automatically.

j. Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

k. Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

l. Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

---

[11] *See*, U.S. Department of Health & Human Services, Security Rule Guidance Material, http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html

m.  Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

n.  Consider disabling Remote Desktop protocol (RDP) if it is not being used.

o.  Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

p.  Execute operating system environments or specific programs in a virtualized environment.

q.  Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

r.  Conduct an annual penetration test and vulnerability assessment.

s.  Secure your backups.[12]

t.  Identify the computers or servers where sensitive personal information is stored.

u.  Identify all connections to the computers where you store sensitive information. These may include the internet, electronic cash registers, computers at your branch offices, computers used by service providers to support your network, digital copiers, and wireless devices like smartphones, tablets, or inventory scanners.

v.  Don't store sensitive consumer data on any computer with an internet connection unless it's essential for conducting your business.

w.  Encrypt sensitive information that you send to third parties over public networks (like the internet) and encrypt sensitive information that is stored on your computer network, laptops, or portable storage devices used by your employees. Consider also encrypting email transmissions within your business.

x.  Regularly run up-to-date anti-malware programs on individual computers and on servers on your network.

y.  Restrict employees' ability to download unauthorized software. Software downloaded to devices that connect to your network (computers, smartphones, and tablets) could be used to distribute malware.

z.  To detect network breaches when they occur, consider using an intrusion detection system.

aa. Create a "culture of security" by implementing a regular schedule of employee training. Update employees as you find out about new risks and vulnerabilities.

bb. Tell employees about your company policies regarding keeping information secure and confidential. Post reminders in areas where sensitive information is used or stored, as well as where employees congregate.

cc. Teach employees about the dangers of spear phishing—emails containing information that makes the emails look legitimate. These emails may appear to come

---

[12] *How to Protect Your Networks from Ransomware*, at p.3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited June 2, 2025).

from someone within your company, generally someone in a position of authority. Make it office policy to independently verify any emails requesting sensitive information.

    dd. Before you outsource any of your business functions investigate the company's data security practices and compare their standards to yours.[13]

34.    Given that Defendant collected, used, and stored PHI, Defendant could and should have identified the risks and potential effects of collecting, maintaining, and sharing personal information.

35.    Without identifying the potential risks to the personal data in Defendant's possession, Defendant could not identify and implement the necessary measures to detect and prevent cyberattacks. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures, resulting in the Data Breach and the exposure of Plaintiff's and the Class Members' PHI/PII.

***Plaintiff and Class Members Sustained Damages in the Data Breach***

36.    The invasion of the Plaintiff's and Class Members' privacy suffered in this Data Breach constitutes an actual, particularized, redressable injury traceable to the Defendant's conduct. As a consequence of the Data Breach, Plaintiff and Class Members sustained monetary damages that exceed the sum or value of $5,000,000.00.

37.    Additionally, Plaintiff and Class Members face a substantial risk of future identity theft, fraud, or other exploitation where their names and social security numbers were disclosed on the internet. The substantial risk of future identity theft and fraud created by the Data Breach constitutes a redressable injury traceable to the Defendant's conduct.

38.    Upon information and belief, a criminal can easily link data disclosed in the Data Breach with information available from other sources to commit a variety of fraud related crimes.

---

[13] *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited June 2, 2025).

An example of criminals piecing together bits and pieces of data is the development of "Fullz" packages.[14] With "Fullz" packages, cyber-criminals can combine multiple sources of PII to apply for credit cards, loans, assume identities, or take over accounts.

39.     The substantial risk of future identity theft, fraud, or other exploitation that Plaintiff and Class Members face is sufficiently concrete, particularized, and imminent that it necessitates the present expenditure of funds to mitigate the risk. Consequently, Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to understand and mitigate the effects of the Data Breach.

40.     For example, the Federal Trade Commission has recommended steps that data breach victims take to protect themselves and their children after a data breach, including: (i) contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity); (ii) regularly obtaining and reviewing their credit reports; (iii) removing fraudulent charges from their accounts; (iv) closing new accounts opened in their name; (v) placing a credit freeze on their credit; (vi) replacing government-issued identification; (vii) reporting misused Social Security numbers; (viii) contacting utilities to ensure no one obtained cable, electric, water, or other similar services in their name; and (ix) correcting their credit reports.[15]

41.     As a consequence of the Data Breach, Plaintiff and Class Members sustained or will incur monetary damages to mitigate the effects of an imminent risk of future injury. The retail cost

---

[14] "Fullz" is term used by cybercriminals to describe "a package of all the personal and financial records that thieves would need to fraudulently open up new lines of credit in a person's name." A Fullz package typically includes the victim's name, address, credit card information, social security number, date of birth, bank name, routing number, bank account numbers and more. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm  (last visited June 2, 2025).

[15] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last visited June 2, 2025).

CLASS ACTION COMPLAINT

of credit monitoring and identity theft monitoring can cost around $200 a year. The cost of dark web scanning and monitoring services can cost around $180 per year.

## PLAINTIFF SPECIFIC FACTS

42.     Since November 2024, Plaintiff has noticed suspicious activity on his financial accounts or unauthorized attempts to use his information to obtain credit that he believes is related to this Data Breach. Additionally, someone has attempted to steal his identity using the name "Jason R. Gordon," which is not his name and was not authorized by the Plaintiff. Due to the Defendant's delay in sending notice of the Data Breach, Plaintiff must spend additional time rectifying and collecting copies of documents related to the fraudulent events.

43.     Unfortunately, Plaintiff did not receive notice of the Data Breach until May 9, 2025. The breach notice letter provides a host of actions Plaintiff should take, has taken, or will take in the future to protect himself from further exploitation. For example, Defendant encouraged Plaintiff to remain vigilant against incidents of identity theft by reviewing account statements and monitoring credit reports for unusual activity and to detect errors.

44.     Plaintiff has spent time, and will continue to spend time, reviewing his records and accounts for indicia of fraud, contacting utilities to ensure no one obtained cable, electric, water, or other similar services in his name, reading the breach notice letter, and taking other actions in response to the Data Breach. Plaintiff experiences anxiety and stress over the unauthorized disclosure of his Social Security number and the potential for future exploitation presented by the Data Breach.

45.     Plaintiff seeks to recover all out-of-pocket losses, compensation for the time spent dealing with issues arising from the Data Breach, and at least ten years of identity theft/fraud protection to help detect, prevent, and/or remediate potential identity theft and fraud.

46.     Through this Complaint, Plaintiff seeks redress individually, and on behalf of all similarly situated individuals, for the damages that resulted from the Data Breach.

## CLASS ALLEGATIONS

47.     Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

48.     The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class (the "Class")**: All individuals residing in the United States whose PHI/PII was disclosed between September 2024 and November 2024, as reported by Defendant.

**Arkansas Subclass (the "Subclass")**: All individuals residing in Arkansas whose PHI/PII was disclosed between September 2024 and November 2024, as reported by Defendant.

49.     The Class and Subclass may be referred to collectively as the "Class" or "Class Members."

50.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

51.     Plaintiff reserves the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

52.     <u>Numerosity</u>: The members of the Classes are so numerous that joinder of all members is impracticable, if not completely impossible. The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time and such number is exclusively in the possession of Defendant, there are more than 400,000 individuals affected by the Data Breach.

53.    Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. The questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, includes the following:

    a.   Whether and to what extent Defendant had a duty to protect the PHI/PII of Plaintiff and Class Members from unauthorized disclosure;

    b.   Whether Defendant had a duty not to disclose the PHI/PII of Plaintiff and Class Members to unauthorized third parties;

    c.   Whether Defendant failed to adequately safeguard the PHI/PII of Plaintiff and Class Members;

    d.   Whether Defendant required its third-party vendors to adequately safeguard the PHI/PII of Plaintiff and Class Members;

    e.   When Defendant actually learned of the Data Breach;

    f.   Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PHI/PII had been compromised;

    g.   Whether Defendant failed to implement and maintain reasonable privacy/security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    h.   Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

    i.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of the Data Breach.

54.    <u>Typicality</u>: Plaintiff's claims are typical of those of the other members of the Classes because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Classes.

55.    <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies challenged herein apply to and affect Class Members

uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

56.    Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

57.    Superiority and Manageability: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

58.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will

establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

59.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

60.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

61.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PHI/PII of Classes, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

62.    Further, Defendant has acted on grounds that apply generally to the Classes as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

63.    Likewise, particular issues under Rule 42(d)(1) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.  Whether Defendant failed to timely notify the Plaintiff and the Classes of the Data Breach;

    b.  Whether Defendant owed a legal duty to Plaintiff and the Classes to exercise due care in collecting, sharing, storing, and safeguarding their PHI/PII;

    c.  Whether Defendant failed to take commercially reasonable steps to safeguard consumer PHI/PII;

d.   Whether Defendant made false representations about their data privacy practices and commitment to the confidentiality of personal information; and

e.   Whether adherence to HIPAA rules and/or other data privacy recommendations and best practices would have prevented the Data Breach.

## CAUSES OF ACTION
### (*On behalf of Plaintiff and Class Members*)

### COUNT 1: NEGLIGENCE/WANTONNESS

64.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

65.     While providing a health care related service, Defendant collects, creates, or shares information about Plaintiff's and Class Members' health status, provision of health care, or payment for health care that can be used to identify Plaintiff and Class Members.

66.     Catholic Health entrusted Defendant with Plaintiff and Class Members' PHI/PII with the understanding that Defendant would adequately safeguard their information.

67.     Defendant had full knowledge of the types of PHI/PII it collected and the types of harm that Plaintiff and Class Members would suffer if that data was disclosed without authorization.

68.     By collecting, storing, sharing, and using the Plaintiff's and Class Members' PHI/PII, Defendant assumed a duty to use reasonable means to maintain the confidentiality of the personal data it obtained.

69.     Defendant's duty included a responsibility to ensure it: (i) implemented reasonable administrative, technical, and physical measures; (ii) contractually obligated its vendors to adhere to the requirements of HIPAA; (iii) complied with applicable statutes and data protection obligations; (iv) conducted regular privacy assessments of its and its vendors' data processing activities; and (v) provided timely notice to individuals impacted by a data breach event.

70.    Defendant is business associate, as defined by HIPAA and, as such is required to comply with the HIPAA Privacy Rule ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A, C, and E. Under these rules, Defendant had a duty to implement reasonable and appropriate safeguards for the protected health information under its control.

71.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Defendant to provide notification no later than 60 calendar days after the discovery of an unauthorized disclosure of unencrypted protected health information. Defendant had a duty to notify Plaintiff and the Classes of the Data Breach promptly and adequately. Such notice was necessary to allow Plaintiff and the Classes to take steps to prevent, mitigate, and repair any fraudulent usage of their PHI.

72.    Defendant breached its duties under HIPAA by failing to conduct regular privacy assessments and security audits; failing to implement reasonable safeguards; failing to encrypt data; failing to review and modify its privacy and security measures to ensure they remain appropriate to protect the data collected; and/or failing to timely notify Plaintiff and Class Members of the Data Breach.

73.    Defendant also had a duty under Section 5 of the Federal Trade Commission Act, 15 U.S.C. §45, which prohibits unfair or deceptive trade practices that affect commerce. Deceptive practices, as interpreted by the FTC, include failing to adhere to a company's own published privacy policies.

74.    Defendant violated Section 5 of the FTC Act by failing to adhere to its own privacy policy regarding the confidentiality and security of Plaintiff and Class Members information. Defendant further violated Section 5 of the FTC Act, and other state consumer protection statutes by failing to use reasonable measures to protect PHI.

75.     Defendant's violations of HIPAA Privacy, Security and/or Breach Notice Rules, Section 5 of the FTC Act, and other state consumer protection statutes, constitutes negligence/wantonness.

76.     Defendant's failure to adhere to its data privacy and security obligations was a reckless disregard for the Plaintiff and Class Members' privacy rights.  Defendant knew, or should have known, that its failure to take reasonable precautions might result in injury to Plaintiff and Class Members. The negligent and wanton acts or omissions committed by Defendant includes, but is not limited to, the following:

       a.  Making databases storing unencrypted PHI/PII publicly available.

       b.  Failing to encrypt PHI/PII in transit and at rest.

       c.  Failing to adopt, implement, and maintain reasonable administrative, technical, and physical measures to safeguard PHI/PII.

       d.  Allowing unauthorized access to PHI/PII.

       e.  Failing to detect in a timely manner that PHI/PII had been compromised.

77.     Plaintiff and Class Members were within the class of persons HIPAA and the Federal Trade Commission Act were intended to protect and the type of harm that resulted from the Data Breach was the type of harm the statues were intended to guard against.

78.     The injuries resulting to Plaintiff and the Classes because of Defendant's conduct was reasonably foreseeable.

79.     Plaintiff and the Class were the foreseeable victims of a data breach. Defendant knew or should have known of the inherent risks in collecting and storing PHI/PII and the critical importance of protecting that data.

80.     Plaintiff and the Classes had no ability to protect the PHI/PII in Defendant's possession. Defendant was in the best position to protect against the harms suffered by Plaintiff and the Classes because of the Data Breach.

81.    But for Defendant's breach of duties owed to Plaintiff and the Class, their PHI/PII would not have been compromised. There is a close causal connection between Defendant's failure to protect the confidentiality of Plaintiff and the Class' PHI/PII and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. Defendant's negligence/wantonness proximately caused the Data Breach and other economic and non-economic losses.

82.    As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PHI/PII; (iii) lost or diminished value of PHI/PII; (iv) lost time and opportunity costs associated with attempting to investigate/mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) imminent injury arising from an increased risk of fraud, identity theft, discrimination, or abuse due to sensitive data being disclosed; (vii) statutory damages; (viii) actual damages; and (ix) the continued and increased risk their data will be misused, where it remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PHI/PII.

83.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

84.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to strengthen its data privacy practices.

## COUNT 2: BREACH OF IMPLIED CONTRACT

85.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

86.    Defendant creates or collects PHI/PII in the ordinary course of providing products or services. In so doing, Plaintiff and Class Members entered implied contracts with Defendant by which Defendant agreed to use reasonable technical, administrative, and physical safeguards to

protect against unauthorized access to, use of, or disclosure of the confidential information it collects and stores.

87. Plaintiff and Class Members' healthcare providers would not have entrusted the PHI/PII to Defendant in the absence of an expressed or implied promise to implement reasonable data protection measures.

88. Plaintiff and Class Members fully and adequately performed their obligations under the implied contract with Defendant.

89. Defendant breached the implied contract with Plaintiff and Class Members which arose from the course of conduct between the parties, as well as disclosures on the Defendant's web site, privacy policy, and in other documents, all of which created a reasonable expectation that the personal information Defendant collected would be adequately protected and that the Defendant would take such actions as were necessary to prevent unauthorized access to, use of, or disclosure of such information.

90. As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PHI/PII; (iii) lost or diminished value of PHI/PII; (iv) lost time and opportunity costs associated with attempting to investigate/mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) imminent injury arising from an increased risk of fraud, identity theft, discrimination, or abuse due to sensitive data being disclosed; (vii) statutory damages; (viii) actual damages; and (ix) the continued and increased risk their data will be misused, where their data remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PHI/PII.

91. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

92.     Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to strengthen its data privacy practices.

**COUNT 3: UNJUST ENRICHMENT**

93.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

94.     Plaintiff brings this Count in the alternative to the breach of implied contract count above.

95.     By collecting Plaintiff and Class Members' PHI from Catholic Health, a monetary benefit was conferred on Defendant. Defendant knew that Plaintiff and Class Members conferred a benefit upon them and have accepted and retained that benefit.

96.     By collecting the PHI/PII, Defendant was obligated to keep such information confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been compromised.

97.     Defendant failed to secure Plaintiff and Class Members' PHI/PII and, therefore, it would be unjust for Defendant to retain any of the benefits that were conferred upon Defendant without paying value in return.

98.     As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PHI/PII; (iii) lost or diminished value of PHI/PII; (iv) lost time and opportunity costs associated with attempting to investigate/mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) imminent injury arising from an increased risk of fraud, identity theft, discrimination, or abuse due to sensitive data being disclosed; (vii) statutory damages; (viii) actual damages; and (ix) the continued and increased risk their data will be misused, where their data remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PHI/PII.

99.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

100.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to strengthen its data privacy practices.

## COUNT 4: INVASION OF PRIVACY

101.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

102.    Plaintiff and Class Members had a legitimate expectation of privacy in their protected health information and other personally identifying information. Plaintiff and Class Members were entitled to the protection of this information from disclosure to unauthorized third parties.

103.    Defendant owed a duty to Plaintiff and Class Members to keep their PHI/PII confidential.

104.    Defendant permitted the public disclosure of Plaintiff and Class Members' PHI/PII.

105.    The PHI/PII that was disclosed without the Plaintiff's and Class Members' authorization was highly sensitive, private, and confidential. The public disclosure of the type of PHI/PII at issue here would be highly offensive to a reasonable person of ordinary sensibilities.

106.    Despite knowledge of the substantial risk of harm created by these conditions, Defendant intentionally disregarded the risk.

107.    By permitting the unauthorized disclosure, Defendant acted with reckless disregard for the Plaintiff's and Class Members' privacy, and with knowledge that such disclosure would be highly offensive to a reasonable person. Furthermore, the disclosure of the PHI/PII at issue was not newsworthy or of any service to the public interest.

108.    Defendant failed to implement appropriate policies and procedures to prevent the unauthorized disclosure of Plaintiff's and Class Members' data.

109.    Defendant acted with such reckless disregard as to the safety of Plaintiff's and Class Members' PHI/PII to rise to the level of intentionally allowing the intrusion upon the seclusion, private affairs, or concerns of Plaintiff and Class Members.

110.    Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined at trial.

## COUNT 5: THIRD PARTY BENEFICIARY

111.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

112.    Plaintiff and the Class Members are third-party beneficiaries of the business associates agreement between Catholic Health and Serviceaide, under which Defendant received Plaintiff's and Class Member's PHI and stored that information in its Elasticsearch database.

113.    Defendant's business associates' agreement, or other contract, with Catholic Health, contained the elements specified in 45 C.F.R. §164.504(e). The express terms of the agreement required Defendant to use appropriate safeguards to prevent the unauthorized disclosure of PHI.  Those contract terms were clearly intended to govern the privacy and security of Plaintiff's and the Class Members' PHI/PII. As such, Plaintiff and Class Members were the direct and intended beneficiaries of these contracts.

114.    Defendant breached the foregoing contracts by failing to adequately protect Plaintiff's and Class Members' PHI, resulting in the Data Breach and resulting damages. Defendant further breached the business associate's agreement by:

    i.    Disclosing PHI in a manner other than as permitted or required by the contract or law; and

    ii.    Failing to use appropriate safeguards to prevent disclosure of PHI other than as provided for by its contract.

115.     Defendant knew, or should have known, that breaching these contractual data protection obligations would directly harm Plaintiff and the Class—the intended beneficiaries of those protections.

116.     Defendant's conduct constitutes a breach of the covenant of good faith and fair dealing. As a direct and proximate result, Plaintiff and Class Members are entitled to actual, compensatory, and consequential damages.

117.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and Class Members are entitled to appropriate relief such as: (a) equitable or declaratory relief as may be appropriate; (b) reasonable attorney's fee and other litigation costs reasonably incurred; (c) statutory relief, and (d) monetary damages, in an amount to be determined at trial.

**COUNT 6: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (UCL)**

118.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

119.     Defendant gathered and stored the PII/PHI of Plaintiff and Class Members as part of its business of soliciting its services to customers. As part of its Customer Privacy Notice, Defendant promised to use reasonable administrative, technical, and physical safeguards, appropriate for the nature and character of the data it collected. By failing to adhere to its own published privacy policies, Defendant engaged in an unlawful, unfair, false, misleading, or deceptive business practice in violation of Cal. Bus. & Pro. Code §17200, et seq., which prohibits such practices.

120.     Defendant violated the consumer protection statute by failing to adhere to its own privacy policy regarding the confidentiality and security of Plaintiff's and Class Members' information. Defendant further violated California Civil Code §1798.100(e), by failing to use reasonable measures to protect PHI from unauthorized disclosure.

121.    Defendant also violated California Civil Code §1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and the Class's nonencrypted and nonredacted PII/PHI.

122.    Defendant's conduct created a likelihood of confusion or misunderstanding regarding its actual data privacy and security practices. Defendant promised to protect Plaintiff's and Class Members' PII/PHI via its privacy policies, but allowed the unauthorized disclosure of this personal and protected health information as a result of Defendant's violation of the duty to implement and maintain reasonable security procedures and practices; Defendant failed to disclose material facts that the Plaintiff's and Class Members' PII/PHI would be made publicly available; Defendant failed to obtain Plaintiff's and Class Members' consent in disclosing their PII/PHI to the public; and knowingly violated industry and legal standards regarding the confidentiality and availability of Plaintiff's and Class Members' PII/PHI.

123.    Defendant's failure to adhere to its published privacy policies and procedures is offensive to established public policy and is substantially injurious to consumers as evidenced by the massive Data Breach. The right to privacy is a personal and fundamental right protected by the United States Constitution and all individuals, including Plaintiff and Class Members, have a right of privacy in their PHI. See, Cal. Civ. Code §1798.1.

124.    As a direct and proximate result of the Defendant's conduct, Plaintiff and Class Members suffered damages including, but not limited to: (i) invasion of privacy; (ii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iii) mitigation costs and expenses; and (iv) attorneys' fees and court costs.

125.    Plaintiff alleges that Defendant's data security measures remain inadequate. Plaintiff will continue to suffer injury as a result of the compromise of their PHI/PII and remain at imminent risk that further compromises of their PHI/PII will occur in the future.

126.    Plaintiff and Class Members have suffered irreparable injury, and will continue to suffer injury in the future, as a result of Defendant's unlawful business practices, which place Plaintiff and Class Members at imminent risk that further compromises of their PHI will occur in the future. As such, the remedies available at law are inadequate to compensate for that injury. Accordingly, Plaintiff and Class Members also seek to obtain a judgment declaring, among other things, the following:

    a.   Defendant continues to owe a legal duty to secure PHI/PII and to timely notify consumers of a data breach.

    b.   Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiff and Class Members' PHI/PII.

127.    The Court also should issue corresponding prospective injunctive relief requiring that Defendant employs adequate data protection practices consistent with law and industry standards.

128.    The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Among other things, if another massive data breach occurs, Plaintiff will likely be subjected to fraud, identity theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

129.    The issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by encouraging Defendant to take necessary action to prevent another data breach, thus eliminating the additional injuries that would result to Plaintiff and the multitude of individuals whose PHI would be at risk of future unauthorized disclosures.

130.    As a result of the Defendant's false, misleading, or deceptive acts, regarding its data security practices, the consuming public in general, Plaintiff, and Class Members suffered

injuries including, but not limited to, the future and continued risk their PHI will be misused, where their unencrypted data remains under Defendant's possession or control and subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PHI.

131.    Plaintiff and Class Members are entitled to attorneys' fees, costs, and injunctive relief requiring Defendant to strengthen its data protection procedures and to provide adequate dark web monitoring and/or credit monitoring to all affected by the Data Breach.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Class and Subclass alleged herein, respectfully requests that the Court enter judgment as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff(s) as the representatives for the Class and Arkansas Subclass and counsel for Plaintiff(s) as Class and Subclass Counsel;

B.    For an order declaring the Defendant's conduct violates the statutes and causes of action referenced herein;

C.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D.    For actual, compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

G.    For injunctive relief as pleaded or as the Court may deem proper; and

H.    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

I.    Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

DATED: June 11, 2025

Respectfully submitted,
/s/ John C. Bohren
John C. Bohren (California Bar No. 295292)
**YANNI LAW APC**
P.O. Box 12174
San Diego, CA 92112
Telephone: (619) 433-2803
Fax: (800) 867-6779
yanni@bohrenlaw.com
                -AND-

Paul J. Doolittle, Esq.*
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
        cmad@poulinwilley.com

*Attorneys for Plaintiff and Proposed Class*

*Pro Hac Vice forthcoming

CLASS ACTION COMPLAINT